# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:10CR136 |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| SHANON R. THOMAS, | ) | |
| Defendant. | ) | |

This matter is before the Court on the Findings and Recommendation (Filing No. 35) issued by Magistrate Judge F.A. Gossett recommending that the motion to suppress (Filing No. 27) filed by the Defendant, Shanon R. Thomas, be denied. Thomas filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 41, 42), and the government responded (Filing No. 43).

Thomas is charged in the Superseding Indictment with murder (Count I) and using a firearm during and in relation to a crime of violence (Count II). He seeks the suppression of pre-arrest statements given on April 18, 2010, and post-arrest statements given on April 18 and 19, 2010.

Following an evidentiary hearing, Judge Gossett issued oral findings of fact and conclusions of law and a one-page Findings and Recommendation. (Filing No. 35.) Judge Gossett concluded: testifying Agents Grunder and Smith were credible; the statements made at the home of Thomas's mother were noncustodial and, therefore, *Miranda* warnings were unnecessary; Thomas voluntarily, knowingly and intelligently waived his *Miranda* rights at the police station on April 18 and on April 19, 2010.[1] Judge Gossett therefore recommended that the motion be denied.

---

[1] Judge Gossett also concluded that the swabs given at the police station were done so voluntarily, although this issue had not raised been raised.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Judge Gossett provided a statement of facts surrounding the events in question. The Court has considered the transcript of the evidentiary hearing and viewed the evidence. Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Gossett's factual findings in their entirety.

## FACTUAL BACKGROUND

The facts are best read in their entirety in the hearing transcript. (Filing No. 94-99.)

## ANALYSIS

Thomas objects to the following conclusions of law: the agents were credible; Thomas was not in custody when he made statements on April 18, 2010, at his mother's residence; no taint existed with respect to the two interrogations at the police station; and the agents did not deliberately fail to advise Thomas under *Miranda* at his mother's home as prohibited under *Missouri v. Seibert,* 542 U.S. 600 (2004).

### *Credibility of Officers; Seibert v. Missouri*

Thomas argues that Agents Grunder and Smith, who testified at the hearing, were not credible as they deliberately did not give Thomas *Miranda* warnings at his mother's

2

residence. While it might have been preferable for the agents to have proceeded differently, the Court cannot conclude that they deliberately failed to give Thomas *Miranda* warnings at his mother's home, a requirement for the application of *Seibert*.[2] The Court has also considered Thomas's analysis of the decision in *United States v. Torres-Lona,* 491 F.3d 750, 758 (8th Cir. 2007).[3] Nevertheless, a careful review reveals that the record in Thomas's case does not support the application of *Seibert*. For these reasons, the objections relating to the credibility of the agents and the application of *Seibert* are denied.

***Statements at Mother's Residence***

Thomas argues that he was in custody when he made statements at his mother's residence and therefore, because *Miranda* warnings were not given, those statements must be suppressed.

At issue are the following questions and answers (separated by other conversation and statements):

Q1: Why did you do it? Were you drinking? (one question immediately preceded the other)

A1: I hadn't been drinking at all.

Q2: When did you get the gun?

---

[2]Under *Seibert,* "if officers question a suspect and deliberately delay reciting the Miranda warnings in order to provoke a confession, any statements made after the warnings are inadmissible." *United States v. Wise,* 588 F.3d 531, 536 (8th Cir. 2009).

[3]In *Torres-Lona,* the Eighth Circuit discussed the following factors as indicators of a deliberate failure to give *Miranda* warnings: a post-warning confession of a criminal offense, as opposed to a false statement that could result in an administrative proceeding; and use of the pre-warning statement to impeach during a post-warning interrogation. *Torres-Lona,* 491 F.3d at 757-58.

3

A2:	Earlier in the night.

Q3:	Where did you get the gun?

A3:	It was gone.

Thomas also stated, not in response to any question: "I didn't mean to gun her down." At that time, Agent Grunder believed he had enough probable cause to arrest Thomas, and agents did so.

The Eighth Circuit has stated the factors that indicate custody: whether the defendant was told he was "free to leave and not required to answer any questions"; whether the defendant was free to move about; whether the defendant initiated the contact or acquiesced; whether officers used "strong arm tactics or strategies"; whether "'the atmosphere was police dominated'"; and whether the defendant was arrested at the end of the interview. *United States v. Johnson,* __ F.3d __, 2010 WL 3385235, at *6 (8th Cir. Aug. 30, 2010) (quoting *United States v. Flores-Sandoval,* 474 F.3d 1142, 1146-47 (8th Cir. 2007)).

In this case, Thomas initiated the contact by asking to talk to the officers. Thomas was hugging his crying mother when they arrived, and he motioned to the officers and told them to come in. Thomas was not told he was free to leave or that he did not have to answer questions. Agent Smith testified that he asked whether Thomas was drinking as an interrogation technique to give Thomas a chance to rationalize why he allegedly murdered the deceased, and Agent Grunder testified that he questioned Thomas until he believed he had probable cause to arrest him. Once it was felt that officers had probable cause, they arrested Thomas. *Miranda* warnings were not given at the scene; they were given at both interviews at the police station.

The Court has very carefully considered the facts of this unusual case, and the applicable law. The Court concludes that Thomas was not in custody at his mother's home until he was handcuffed, and therefore *Miranda* did not apply. Therefore, the Court concludes that Thomas's statements at his mother's residence should not be suppressed, and the objections are denied.

### *Post-Arrest Statements; Fruit of Poisonous Tree; Seibert*

Thomas argues that the post-arrest statements given after *Miranda* warnings were administered on April 18 and 19, 2010, at the police station should be suppressed as fruit of the alleged initial constitutional violation. As there was no initial constitutional violation, and the Court concludes that *Seibert* does not apply, this objection is denied.

### CONCLUSION

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 35) is adopted;

2. The Defendant's objections to the Findings and Recommendation (Filing No. 41) are overruled; and

3. The Defendant's motion to suppress (Filing No. 27) is denied.

DATED this 12th day of October, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge